Christian, J.
This is an appeal from a decree of the Circuit court of the city of Richmond.
The facts disclosed by the record are as follows :
Richard A. Carrington died intestate, some time during the year 1855, seized of a large real estate in the *638 city of Richmond. He left surviving him a widow and four children.
Soon after his death a certain portion of his real estate was, in pursuance of an order of the court of Hustings the city of Richmond, assigned to his said widow for her dowfer, which is described by the commissioners who made the assignment as “ the house and lot on the west side of Seventeenth street, between Main and Cary, having a front of 50 feet, and now occupied'by Stearns &Brummel; * * the lot Ho. 26, on Hnion street, * * and the vacant lot H on Yalley street.”
On the 2d day of March 1863, R. M. Oary, who had qualified as the guardian of two of the infant children, Mary E. and Emily C. Carrington, filed his bill in the Circuit court of the city of Richmond, against the widow and heirs of the said Richard A. Carrington; the two last named being infants. The bill and all the other papers in that suit were destroyed, except three decrees, which have been preserved, and are copied in the record before us, as exhibits in this suit by the appellees.
The first decree was entered on the 2d March 1863, and shows that the guardian, R. M. Cary, filed his bill against the widow and heirs of the said Richard A. Carrington, and on his motion a guardian ad litem was appointed to the infant defendants to defend them in this suit; and the said infant defendants, by their guardian ad litem as aforesaid, the said guardian ad litem, the said infants (who are over the age of fourteen years), and the adult defendants, by counsel, filed their answers to the said bill, to which the plaintiff replied generally; and by consent of parties the cause was tírdered to be docketed. On the 9th March 1863, the following decree was entered : .
“ This cause came on this day to be again heard on the bill, answers, replications, exhibits, examination of witnesses, and was argued by counsel. On consideration whereof, the court doth adjudge, order and decree that Geo. W. Randolph, esq., who is hereby appointed a *639 commissioner for that purpose, shall, after advertising, &c., &c., expose to sale at public auction, on the premises, to the highest bidder, the dower estate of Mrs. Louisa Carrington in the bill mentioned.” The decree then provides the usual terms of sale of real estate at that time, and provided that purchasers might anticipate the payments, and pay the whole, or any part thereof, in cash, when thefinterest should be rebated.
The only remaining decree which has been preserved, is one entered on the 22nd May 1863, in which the cause came on to be heard on the papers formerly read, the report of Commissioner Randolph, with the account of sales, the two statements of Jno. A. Lancaster & Co., the report of the surveyor and the bond of nineteen thousand dollars, therein mentioned, and with a report filed on that day. On consideration whereof, it was adjudged and decreed that ‘ ‘ the sale of the real estate reported by the said commissioner and the investment made by him be confirmed.” And the commissioner was directed to convey the said real estate to the purchasers respectively.'
There are filed with the bill of the appellees, two deeds executed by Geo. W. Randolph, commissioner, to the purchasers, as directed by the last recited decree. One of these deeds, after reciting the decree, and the sale made in pursuance thereof, conveys to Frederick C. Brauer ££ a lot on the west side of 17th street, between Main and Cary streets, in the city of Richmond, fronting fifty feet on 17th street, and running back one hundred and thirty feet, with a large brick warehouse thereon, formerly occupied by Stearns & Brummel; the said lot being a part of the dower estate of Mrs. Louisa Carrington.” ■ The other deed, after like recitals, conveys to Henry Metzger lot H, by certain metes and bounds, the said lot being a part of the dower estate of Mrs. Louisa Carrington, the widow of JR. A. Carrington, dee'd.
The property conveyed to Brauer, to vvit: the'ware *640 house and the larger portion of the lot on 17th street, was s°ld in 1865, and conveyed by Brauer and wife to "Walker, executor of John S. Walker, andtrustee for Lucy W. Walker and her children, and the portion of that lot was sold and conveyed to John M. Otey on the 6th November 1868.
In January 1869, Emily C. Carrington and Mary Eliza Carrington (who were both infants when the proceedings above referred-to‘were had in the Circuit court of the city of Richmond in the year 1868), having arrived at age and married, the one with William M. Page, and the other with George A. Thomas, a bill was filed by the said William Mi Page and wife, and George A. Thomas and wife, against the purchasers of the real estate sold by George W. Randolph, commissioner, and those who claim under said purchasers and in possession of the same.
After setting forth the proceedings in the suit above referred to, the sale under the decree by George W. Randolph, commissioner, the confirmation of that sale and the investment of the proceeds in Confederate States bonds, they ask that the sales may be set aside, because the commissioner was not authorized to receive Confederate currency, and was not authorized to invest the proceeds of sale in Confederate bonds ; and they insist “ that the conveyances to the purchasers at that sale were of no binding force or validity, as against any of the parties to said suit who were entitled to said real estate, except such as were capable of assenting thereto ; and that at the date of said transactions, the female complainants being both infants, were legally incapable of assenting thereto, and have, since they attained lawful age, never in any way ratified or assented to the same ; without which they humbly insist they cannot be deprived of their real estate.”
The bill was answered by the defendants, Metzger, Brauer, David N. Walker, trustee of Lucy Walker and *641 her children, and John M. Otey, and was taken for confessed as to the other adult defendants, and came on to be heard upon the bill and answers and examination of witnesses ; and the said Circuit court “ beiugof opinion that the decree of the 22d May 1868, in the bill mentioned, confirming the sale and directing conveyances of the real estate as alleged in the bill, held by the defendant, Louisa Carrington, as her dower, (a copy whereof is filed as an exhibit in this cause), is not binding upon the female complainants,” &e., it was adjudged and ordered “ that the said decree, so far as it was intended to divest the rights and interests of the female complainants in the said real estate be set aside ; and that the deeds of conveyance made in pursuance of said decree, so far as they were intended to convey the rights and interests of the female complainants, be and the same are hereby set aside and annulled, and the said female complainants are hereby declared to be entitled to the same rights and interests in the said real estate, as they would be eutitled to respectively if said sales and conveyances had never been made.
It is from this decree that an appeal has been allowed to this court.
It will be observed that the plaintiffs in their hill place their claim for relief upon two grounds : 1st. That Commissioner Randolph was not authorized to sell and convey the real estate in which they had a reversion, for Confederate money, and had no authority to make for them an investment in Confederate bonds ; and 2d. That if such proceedings were binding upon those who assented to them, being of lawful age, they were not bound by them, because they were infants; and having now attained lawful age, they may now impeach the validity of the judicial proceedings which divested them of their real estate without their consent. These are the grounds taken by the plaintiffs in their bill. There are other *642 grounds urged in argument in this court, which will be h-hly considered presently.
r^e decree directing a sale was pronounced by the-Circuit court of the city of Richmond, on the 9th day Mar°h 1868. At that time, the fact that Confederate-States treasury notes was the only currency in circulation in this State, is so notorious, that if there was no proof on the subject, in the record, it might be taken notice of judicially, by this court, as a matter of current public history. And all decrees pronounced by the courts of this Commonwealth for the sale of property at as late a period of the war as the year 1863, and all judicial sales made under such decrees, must be taken to be rendered and made for the currency which then constituted the only circulating medium of the country, unless such decree in plain terms, directed otherwise.
It is impossible to conceive that the able and experienced judge who entered the decree referred to, intended that the commissioner he appointed to execute his decree-should sell the property for any other currency than that which was the only circulating medium. There was nothing in the térms of the decree to show such a purpose. It directed its commissioner to sell the property at public auction to the highest bidder, “ requiring cash sufficient to defray the expenses of sale, and negotiable notes well endorsed, payable in six, nine and twelve months, for the remainder ; ” and allowed the purchaser to anticipate the payments, and pay the whole amount of the purchase money in cash. Ry the express terms of this decree, the commissioner was fully authorized to receive the purchase money in Confederate States treasury notes. That the courts of this Commonwealth during the war had the authority to decree sales for Confederate money, and to make investments of funds under their control in Confederate securities is no longer an open question. It is definitively settled by legislative enactment, by repeated decisions of this court recogniz *643 ing the validity of such decrees and investments, and by the Supreme Court of the United States. Transactions in Confederate currency during the war, and investments in Confederate securities (when properly made), now be held to be as valid and binding as if made times of peace in a sound currency. To hold such transactions null and void would unsettle half the titles to real estate throughout the Commonwealth, and would beget universal discord, confusion and chaos.
But it is insisted by the learned counsel for the appellees, that when the decree was entered the plaintiffs in this suit were infants, and that they now have the right to show cause against the decree of March 9th, 1868 ; and that they now have the right to show that this decree was not warranted, because it was not to the interest of the infants that the real estate should have been sold at the time the said decree was rendered.
The right of an infant to show cause against a decree which affects his interests, after he arrives at age, must be limited to this extent, to show cause existing at the rendition of the decree ; and not such as arose after-wards.
The question always must be, can any cause be shown why the decree, at the time it was rendered, was not a legal and binding decree ? In this case it is proposed to show by the infants, after they arrive at age, that it was not to their interest to sell the real estate in the decree mentioned, and that, therefore, the court was not warranted in decreeing the sale. And it is urged that it did not promote the interests of the infants, because the land sold was a reversion expectant' on the expiration of their mother’s dower estate; that such sale was to the widow’s benefit, but not the infants’; that it secured to her a larger income than the rental value, but was a sacrifice of their reversionary interest, and a total loss to them of real estate worth §10,000 and upwards in gold.
It is to be observed, that the jurisdiction of the court *644 and the regularity of the proceedings are not questioned ; nor is it pretended that there is auy error upon the face of the record, or that the case made by the record did not warrant the decree.
But the stress of the argument is, that the interest of the infants was not promoted by the sale, because the sale was made for Confederate currency, and because the proceeds of sale were invested by the court for the infants in Confederate securities. This argument is not based upon the evidence before the court at the time the decree was entered for a sale of the property ; is not made in the light of the facts then existing and proved before the court, but upon facts existing subsequent to the decree, and in the light of events that happened afterwards. It is easy to show now, after the close of the war, after Confederate currency and Confederate securities have perished, that,- as subsequent events have transpired, the interests of the infants have not been promoted by a sale of their real estate. And if such considerations could govern the adjudications of this court, then every sale of real estate in which infants were interested, made under decrees of courts during the war, must be vacated and annulled : for in every case, as events have happened, their interests cannot be said to have been promoted by a sale of their real estate.
This very state of things strongly illustrates the necessity and wisdom of the rule, that the privilege accorded to the infant to show cause against a decree disposing of his real estate, is limited fo a cause existing at the time the decree was pronounced. He may show cause within six months after attaining full age, against a decree in a suit, to which he was a party as a^. infant. But what cause can be shown to entitle him to vacate the decree ? Can he show that in the light of subsequent events it has turned out that his interests have not been promoted by a sale of his real estate ? Can he, upon arriving at age, *645 introduce evidence to contradict the evidence upon which the court acted in deciding that his interests would be promoted by a sale ? "Will he be permitted, years after the decree has been pronounced by a court of competent jurisdiction, under regular proceedings, upon satisfactory evidence, and when the property has for years been in the hands of a bona fide purchaser, to show, not that the case made by the record did not warrant the decree, but that upon evidence taken long afterwards, and iu the light of facts, not as they existed at the time of the decree complained of, but in the light of subsequent events the decree was not warranted ? And especially when these subsequent events were the results of civil and political revolutions, over which the parties and the courts of chancery had no control, and could not possibly foresee?
Certainly the infant, upon arriving at age, can show no such cause as this, to entitle him to vacate a decree made against him while an infant. He may show error upon the face of the record ; or he may show that the court had no jurisdiction to enter the decree; or if it had jurisdiction, that the proceedings were irregular and not binding upon the parties ; or he may show that the case made by the record did not warrant the decree. But whatever cause he may properly show, he certainly cannot reopen the case, and introduce evidence to contradict that already given and acted upon by the court that entered the decree. If the court which pronounced the decree had jurisdiction of the subject and the parties ; if its proceedings were regular and in accordance with the requirements of law; and the decree is sustained and justified by the evidence then introduced, the infant will not be allowed, as against a bona fide pui’chaser, to go out of the record to show that, upon facts and events arising subsequent to the rendition of the decree, his interests were not promoted by a sale of his real estate.
To establish a contrary doctrine would in effect defeat *646 the very object of the law, and effectually prevent the sale of any real estate belonging to infants. For who would purchase, at a judicial sale, real estate belong-to infants, if their title could be destroyed years afterwards by the introduction of evidence to contradict that upon which the decree was based ? How could a purchaser ever know when a decree was valid and binding; for it would be simply impossible for him to conjecture what evidence might be hunted up to contradict the evidence upon which the decree was founded.
In the case before us the record of the proceedings have been destroyed, except the decrees before referred to. Butin the decree directing the sale, the cause came on to be heard upon the bill, answers, replications, exhibits and examination of witnesses. We are not informed what was the testimony before the Circuit court of the city of Richmond, to show that the interests of the infants would be promoted by a sale of the real estate in the proceedings mentioned ; but we are bound to presume that the evidence was of such a character as to satisfy the intelligent, careful and experienced judge who entered the decree for sale, that the interest of the infants would be promoted by that sale. It is worthy of remark, too, that the mother of these infants was a party to the suit in which the decree was entered, that the infants were represented by a guardian ad litem, and all of the parties represented by counsel distinguished for his professional and personal integrity, who was the commissioner that made the sale, and invested the proceeds under the order of the court. It is to be presumed, then, that the interests of the infants were well considered, and that under the circumstances which then surrounded the transaction, and in the light of the events then transpiring, the court was satisfied upon the evidence then before it, “ that the interest of the infant defendants would be promoted” by a sale of the real estate. It is true, that subsequent events caused the sacrifice of *647 the property, and total loss of the investment made for their benefit; but these were events beyond all mortal prescience, aud could not be anticipated. If the Confederacy had- been a success, then, in point of fact the sale aud investment would have “promoted the interests of the infant defendants for they would have found themselves in possession of property of double the value •of that which was sold.
It was their misfortune that their property was sold and the proceeds invested in what has proved utterly worthless. But the sale was decreed, and the investment made by a court of competent jurisdiction, upon lawful and regular proceedings, and the real estate has passed and the title vested in bona fide purchasers who were only bound to see that all the parties necessary to •convey the title were before the court, and that the sale was in accordance with the decree. Their title cannot •now be divested by showing, that by events subsequent to that decree, it has turned out that the interests of the 'infants were not promoted by the sale.
I proceed now to notice briefly another grouud upon which the decree of the court below is sought to be maintained. It was not taken in the bill or in the pleadings in the cause, but was relied upon with much confidence by the learned counsel for the appellee in their argument before this court. It is now insisted, for the first time, that the ree simple in the real estate referred to, was not ■decreed to be sold by the decree of March 9th, 1863, but only the life estate of Mrs. Louisa Carrington. The decree directs Geo. "W\ Randolph, esq., who was appointed .a commissioner for the purpose, “ to expose to sale at public auction, on the premises, to the highest bidder, the dower estate of Mrs. Louisa Carrington in the bill mentioned,.” It will be remembered that the bill in the suit of Carrington, v. Carrington has been destroyed. If it were in existence, it could certainly be looked to to ascertain the effect and meaning of the decree ; but it is manifes *648 from the papers in said suit, which have been preserved, that the words “the dower estate of Mrs. Louisa Carhmgtou,” must be taken as a description of the property which had been assigned to Mrs. Carrington as her
In the first place, the bill was filed by the guardian of Mary E. and Emily C. Carrington, infants over the age of fourteen years, against the said infants and their mother, Louisa Carrington, George M. Carrington, George W. Jones, and Louisa, his wife, who were all of the heirs of the late Richard A. Carrington. We nan only gather the object of the bill from the proceedings ; and it is obvious that that object was to have the interest of the infant defendants, Mary E. and Emily C. Carrington, in real estate sold. It could not have been to sell the dower interest of the defendant, Louisia Carrington, for with that the plaintiff, who was the guardian of the infants, had nothing whatever to do, nor was it necessary to invoke the aid of a court of Chancery to sell her dower interest.
On the 22d of May 1863, the cause came on again to be heard upon the report of Commissioner Randolph, with the account of sales, the two statements of John A. Lancaster & Co., the report of the surveyor, and the bond of $19,000. "When the court decreed that the sale-of the real estate (not of the dower interest therein,), reported by said commissioner, and the investments made by him, be confirmed, and directed a conveyance of the-, said real estate to the purchasers.
The records still preserved show the investments in this suit to consist of two bonds of the Confederate States, one for $19,000, the other, for $1,800, payable to George W. Randolph, commissioner, interest to Mrs, Louisa Carrington for life, afterwards, as the court may-direct. I thiuk this, of itself, would conclusively show that the whole-fee simple in the property was sold, and not merely Mrs. Carrington’s dower interestfor in that *649 case she would have been absolutely entitled to the whole funds. But in addition to this, the deeds executed by Commissioner Randolph to the purchasers convey to them the lots by metes and bounds, and not the dower interest of Mrs. Carrington in those lots.
I think, therefore, it is evident that the term, “dower estate,” was used in the said decree to describe the property to be sold,' and not the interest in that property. The term “dower estate” was employed for brevity, to-designate the particular part of the estate of Richard. A.. Carrington, which was ordered to be sold.
This is the obvious meaning of the decree gathered; from all the proceedings, and this is its plain meaning as understood by the appellees when they filed their bill.. The point is made for the first time, in the argument of the learned counsel here, and is an argument growing out of the pressing exigencies of their case. But super-added to all this is the direct evidence of the auctioneer, ~W, Goddin, who sold the property, that the fee simple and not the dower was sold, together with the pregnant fact that George ~W. Carrington and George W. Jones and wife, who were the adult parties to the suit of “ Carrington v. Carrington,” have never asserted any claim, whatever, for their remainders in fee to said property.
It is clear that where a doubt arises as to the meaning, and effect of a decree, it may be ascertained by reference to the hill and other proceedings, particularly where these are referred to in the decree itself. Looking to-the proceedings and the papers in the cause which have-been preserved from destruction, I am of opinion that the decree of the 9th March 1863, directed a sale of the fee simple of the real estate in which Mrs. Louisa Carrington had been assigned her dower, and that the title acquired by the purchasers is a complete and perfect title, of which they cannot now be divested at the suit of the appellees.
I am, therefore, of opinion that the decree of the *650 Circuit court of the city of Richmond, pronounced on 10th day of December 1869, should be reversed, and the bill of the appellees should be dismissed.
The other judges concurred in the opinion of Christian, J.
After the opinion in this case had been delivered, and the decree dismissing the bill generally had been entered, those of the appellees who had been plaintiffs in the court below, moved the court to modify the decree, so as to leave the decree of the Circuit court as to the defendant, Metzger, a purchaser at the sale by the commissioner, of one of the lots sold, in force; Metzger not having appealed from that decree.
Christian, J.,
delivered the opinion of the court.
After the opinion in this case was delivered, and the ■order entered, reversing the deeree of the court below, and dismissing the bill, Messrs. Maury and Dunlop, of counsel for the appellee, moved the court to amend the order, so that the bill should not be dismissed as to Henry Metzger, one of the defendants in the suit in the Circuit court. It is now insisted that the decree of the said Circuit court ought not to be reversed as to him, because he did not appeal from the said decree.
The act of the General Assembly, approved June 23d, 1870, entitled “an act to amend the provisions of the Code in regard to the Supreme court of appeals, so as to make them conform to the new constitution,” contains among others, the following provision: “§12. Every appeal, writ of error, or supersedeas, shall, when it is to or from a judgment, decree, or order of any county court, be docketed in the Circuit court which has jurisdiction over such county ; and when it is to or from a judgment, decree, or order of any other court, be docketed in the court of Appeals. The clerk of the court *651 wherein it is docketed, shall issue a summons against the parties interested, other than the petitioners, that they may be heard, and also issue any supersedeas which may be awarded.” Under this provision of the statute, Metzger, who was a co-defendant with Walker’s ex’or and Otey and wife, was before this court as one of the appellees.
Among the rules adopted by this court is the following : c< Rule IX. In any appeal, writ of error, or supersedeas, if error is perceived against any appellee or defendant, the court will consider the whole record as before them, and will reverse the proceedings either in whole or in part, in the same manner as they would do were the appellee or defendant to bring the same before them, either by appeal, writ of error, or supersedeas, unless such error be waived by the appellee or defendant; which waiver shall be considered a release of all error as' to him.”
It is not pretended that there was any wraiver operating as a release of error as to the appellee, Metzger. But it is urged, that inasmuch as he did not unite in the ■appeal, the bill ought not to be dismissed as to him ; but that he is still bound by the decree of the said Circuit court. That decree set aside and annulled a sale of real estate, and the conveyances made under it, by authority of the decree made by the same court (but not the same judge), in March 1868.
Metzger was a.purchaser of a part of that real estate made at the same sale, by the same commissioner under said decree, at which and from whom Brauer, the vendor of Otey and Walker, w'as a purchaser.
This court having reversed the decree of the said Circuit court, annulling the said sale, and setting aside the conveyances under it, has, in effect, affirmed that the said sale and conveyances were lawfully and regularly made, and conferred upon the purchasers under it a valid and legal title.
*652 If the decision in this case had been based upon the ground alone, that Otey and wife, and Walker’s ex’or were &ona purchasers without notice, while Metzger could not claim upon the same ground, then there might some reason for the motion urged by the appellee’s counsel. But this court having decided that the decree of March 1863, was a valid decree, made by a court of competent jurisdiction, and binding on the infant defendants ; and that the purchasers under said decree obtained a valid title, Metzger, the party not appealing, stood on the same ground with the parties who appealed, and their rights were all involved in the same question, and equally affected by the decree. There was a common ground of defence upon which all the parties stood, and the appeal of any one of them necessarily brings under review the propriety of the whole decree, and devolves upon this court the duty of correcting and reversing it in favor of Metzger, as well as of the other defendants, who appealed from the decree. The statute declares that where this court shall reverse the decision of an inferior court, “it shall enter such judgment, decree, or order a3 the court, whose error is sought to be corrected, ought to have entered,” and this court being of opinion that the decree of the said Circuit court was erroneous in annulling and setting aside the sale3 made under the decree of March 1863, and thereby declaring that said decree was valid, and that the sales made under it conferred a good title upon the purchasers, can of necessity enter no other decree than one dismissing the bill, which is the decree that the said Circuit court ought to have entered. And the bill must be dismissed as to all the defendants whose rights are equally affected by the decree reversed.
The rule established by. the practice and decisions of this court may be stated to be this : where the parties stand upon distinct and unconnected grounds, where their rights are separate, and not equally affected by the *653 same deei’ee or judgment, then the appeal of one will not bring up for adjudication the rights or claims of the other. Tate v. Liggat & Matthews, and Liggat & Matthews v. Morgan, 2 Leigh, 84, 107. But where the appealing, and the parties not appealing, stand upon same ground, and their rights are involved in the same question, and equally affected by the same decree or judgment, this court will consider the whole case, and settle the rights of the parties not appealing, as well as those who bring, their case up by appeal. Lewis v. Thornton, 6 Munf. 87, 97; Lenows v. Lenow, 8 Gratt. 349; Liggat & Matthews v. Morgan, 2 Leigh, 84; Purcell v. McCleary, 10 Gratt. 246.
For the reasons above stated, the motion of the appellee’s counsel in this case must be overruled.
Decree of the Circuit court reversed; and the bill dismissed as to all the parties.